RECEIVED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

APR 11 2016

AT 8:30_____M
WILLIAM T. WALSH
CLERK

|  |  |
|---|---|
| KARL D. WILLIAMS,<br><br>        Petitioner,<br><br>    v.<br><br>STEPHEN D'ILIO,<br><br>        Respondent. | HONORABLE ANNE E. THOMPSON<br><br>Civil Action<br>No. 15-1720 (AET)<br><br>**OPINION** |

APPEARANCES:

Karl D. Williams, Petitioner pro se
262764
SBI 436486-B
New Jersey State Prison
PO Box 862
Trenton, New Jersey 08625

Monica L. do Outerio, Esq.
Monmouth County Prosecutor's Office
132 Jerseyville Avenue
Freehold, New Jersey 07728
    Attorney for Respondent Stephen D'Ilio

**THOMPSON, District Judge:**

I.    **INTRODUCTION**

Karl D. Williams,[1] a state prisoner confined at New Jersey

State Prison, has submitted a petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254. Respondent Stephen D'Ilio,

Administrator of New Jersey State Prison, opposes the petition.

---

[1] Portions of the state court records list Petitioner's name as
Carl Williams. The Court adopts the spelling from the submitted
petition.

For the reasons stated herein, the petition shall be denied and no certificate of appealability shall issue.

## II.  BACKGROUND

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, 28 U.S.C. § 2254(e)(1), reproduces the recitation of the facts as set forth by the Superior Court of New Jersey, Appellate Division in its opinion denying Petitioner's appeal from the denial of his post-conviction relief ("PCR") petition:

> On January 1, 2006, at approximately 10:30 p.m., Octavio Pena was walking home from a convenience store in Belmar after buying bubble gum. While talking on the phone, he passed two black men. He paid no attention to them until the shorter of the two, later identified as [Petitioner], grabbed him from behind and said, "Shut up, give me your chain." Pena was wearing a thick gold chain and [Petitioner] tried to grab him, but Pena pushed him away and ran toward his house a short distance away on 14th Avenue. [Petitioner] and the taller individual pursued Pena. When Pena reached his front porch, [Petitioner] began to fight him. Pena banged on his front door and when his roommates turned the lights on, the taller individual who was with [Petitioner] ran away. [Petitioner] continued fighting with Pena until Pena's three roommates came to his aid. Pena told his friends that [Petitioner] was trying to take his chain. Two of the roommates held [Petitioner] while the third called 911.
>
> Belmar police officer Darian Vitello responded to the call. When he arrived at Pena's house, another officer had already separated [Petitioner] from Pena and his roommates. Vitello called a translator so he could interview Pena, who did not speak English. Vitello observed marks around Pena's neck, caused when

2

[Petitioner] tried to grab his chain. Vitello arrested [Petitioner] and later took photos of Pena's injuries.

A Monmouth County grand jury returned an indictment charging [Petitioner] with one count of second-degree robbery, N.J.S.A. 2C:15-1. During [Petitioner]'s jury trial, the State called Pena, Vitello, and Patricia Calton, who lived across the street from Pena. Calton testified that on January 1, 2006, she and her fiancée were watching television when they heard a loud commotion, including yelling and profanities. She went out to her back deck, which fronts onto 14th Avenue, and observed a black man yell at a Hispanic man, "Give me your fucking money, you spic." Calton observed the black man grab the Hispanic around the neck. She called 911 and watched until the police arrived.

[Petitioner] called no witnesses. The jury deliberated for a little more than one hour before returning a verdict of guilty. On April 20, 2007, the trial court sentenced [Petitioner] to an extended term of fifteen years with an eighty-five percent period of parole ineligibility.

*State v. Williams*, No. A-0779-12 (N.J. Super. Ct. App. Div. Mar. 28, 2014), Re 53 at 1-4.[2]

Petitioner filed a direct appeal challenging a portion of the jury instructions and the length of his sentence. *State v. Williams*, No. A-1209-07 (N.J. Super. Ct. App. Div. Apr. 14, 2009), Re 24. Petitioner alleged the trial court erred by instructing the jury: "Before you retire to deliberate and reach your verdict, it is my obligation to instruct you as to the principles of law applicable in this case. You shall consider my instructions in their entirety and pick out any particular

---

[2] "Re" refers to Respondent's exhibits submitted with Respondent's answer, Docket Entry 9.

3

instruction and overemphasize it." *Id.* at 3. The court reporter submitted an affidavit certifying she had "inadvertently omitted the word 'not' during [her] editing of the transcript of this trial." *Id.* at 3-4. The instruction as given at trial stated: "You shall consider my instructions in their entirety and *not* pick out any particular instruction and overemphasize it." *Id.* at 3 (internal quotation marks omitted) (emphasis in original). The Appellate Division found there was no legal error in the charge and affirmed Petitioner's conviction and sentence. *Id.* at 4-5. The New Jersey Supreme Court denied certification on July 20, 2009. *State v. Williams*, 976 A.2d 386 (N.J. 2009).

Petitioner filed a timely PCR motion. PCR counsel filed a motion requesting the production of Ms. Calton's phone records in support of his argument that trial counsel was ineffective for failing to investigate the discrepancy between Ms. Calton's and Detective Vitello's testimonies regarding who called 911 first. Motion for Telephone Records, Re 40. Following oral argument, the PCR Court denied the motion on January 24, 2012. Re 43. The PCR Court denied the petition without an evidentiary hearing on June 27, 2012, PCR Order and Opinion, Re 49, and the Appellate Division affirmed the dismissal, Re 53. The New Jersey Supreme Court denied certification on January 23, 2015. *State v. Williams*, 105 A.3d 1101 (N.J. 2015). This timely petition followed.

4

Petitioner raises four grounds for this Court's consideration:

> I. I was arrested on the night of Jan. 1st 2006, and charged with one count of robbery (second degree), the State prosecuted me under New Jersey's robbery [statute] (2C:15-1), that I used force while attempting to steal property from the victim, because no property from the victim was taken, the state's burden of proof was that defendant attempted a theft, however the trial court failed to define attempt to the jury, in violation of my right to due process.[3]

> II. The state's sole witness, Patricia Calton, was contacted on the night of the incident, she told police that she did not witness the incident. The State contacted Ms. Calton one year after the incident and she gave a statement claiming that she had in-fact witnessed the incident. I filed a motion for Ms. Calton['s] phone record on the night that she alleges to have called 911, and was on the phone with the 911 operator while observing the incident. The PCR court wrongfully denied access to the telephone records. The State knowingly suborned perjury from its sole witness, in violation of my due process.

> III. Ineffective assistance of appellate counsel, for failing to raise the omitted jury instruction defining the attempt element of theft/robbery, on direct appeal, because there was no actual theft of the victim's property. Petitioner was prosecuted under the attempted theft element of N.J.'s robbery [statute] 2C:15-1. In violation of Petitioner's 6th and 14th Amendment rights.

> IV. The state post-conviction relief court's denial of defendant's petition for PCR is not supported by sufficient credible evidence in the record. The court based its denial on a brief submitted by PCR counsel Michael G. Paul, when in fact PCR attorney Michael G. Paul was removed from Petitioner's case, new counsel was assigned and all briefs submitted by Mr. Paul were withdrawn.

---

[3] The grounds as presented in the petition were in all capital letters. The Court has adjusted the text for ease of reference.

(Petition, Docket Entry 1 (emphasis in original)). The State filed its answer and the state court record on July 27, 2015. (Answer, Docket Entry 9). Petitioner did not file a traverse.

## III. STANDARD OF REVIEW

Title 28 U.S.C. § 2254 permits a federal court to entertain a petition for writ of habeas custody on behalf of a person in state custody, pursuant to the judgment of a state court, "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

With respect to any claim adjudicated on the merits by a state court, the writ shall not issue unless the adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

6

28 U.S.C. § 2254(d). A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). "[A] state-court decision is an unreasonable application of clearly established [Supreme Court] precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 134 S. Ct. 1697, 1706, *reh'g denied*, 134 S. Ct. 2835 (2014).

"[A]n unreasonable application of [Supreme Court precedent] must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Id.* at 1702. (internal citations and quotation marks omitted). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Ibid.* (internal citations and quotation marks omitted).

7

"Where the state court has not addressed the merits of a claim, and the merits of the claim are properly before [the Court], then [§ 2254's] deferential standard of review does not apply and [the Court] instead review[s] the claim de novo." *Breakiron v. Horn*, 642 F.3d 126, 131 (3d Cir. 2011) (citing *Porter v. McCollum*, 558 U.S. 30, 39 (2009)). The Court must nevertheless "presume that state-court factual findings are correct unless the presumption is rebutted by clear and convincing evidence." *Ibid.* (citing 28 U.S.C. § 2254(e)(1); *Robinson v. Beard*, 762 F.3d 316, 324 (3d Cir. 2014), *cert. denied sub nom Robinson v. Wetzel*, 136 S. Ct. 53 (2015).

## IV. ANALYSIS

### A. Ground One

In Ground One, Petitioner asserts his due process rights were violated when the trial court failed to sua sponte define "attempt" for the jury as part of the robbery instruction. Petitioner did not raise this claim before the state courts; instead, as he himself admits,[4] he argued before the PCR Court and to the Appellate Division that his trial counsel was ineffective for failing to request this charge and that his direct appeal attorney was ineffective for failing to raise the

---

[4] *See* Petition at 6 ¶ (d)(2).

8

due process claim on direct appeal. He has therefore arguably procedurally defaulted on his trial court-focused claim.[5]

*1. Procedural Default*

"The doctrine of procedural default prohibits federal courts from reviewing a state court decision involving a federal question if the state court decision is based on a rule of state law that is independent of the federal question and adequate to support the judgment." *Fahy v. Horn*, 516 F.3d 169, 187 (3d Cir. 2008) (citing *Nara v. Frank*, 488 F.3d 187, 199 (3d Cir. 2007)). *See also Collins v. Sct'y of Penn. Dept. of Corr.*, 742 F.3d 528 (3d Cir. 2014). "Procedural default occurs when 'a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement.'" *Fahy*, 526 F.3d at 187 (quoting *Coleman v. Thompson*, 501 U.S. 722, 730 (1991)).

Here, it appears that Petitioner may have been precluded under state law from challenging the trial court's failure to sua sponte give the jury instruction defining "attempt." The State argued before the PCR Court that Petitioner had procedurally defaulted on his ineffective assistance claim "as a flaw in a jury instruction is appropriately raised on appeal."

---

[5] Petitioner does not ask this Court to consider whether his trial counsel was ineffective for failing to request the definition. He has therefore waived this claim.

9

Re 49 at 10. The PCR Court noted that "petitioner's claim is that counsel was ineffective for failing to request the charge and an ineffective assistance of counsel claim is generally exempt from the bar of [N.J. Ct. R. 3:22-4] since such a claim can encompass testimony and evidence not already in the record, making it inappropriate for appeal." *Ibid.* The implication of the PCR Court's statement is that while Petitioner was free to raise his *ineffective assistance* claim for the first time on PCR review, he would be procedurally barred from asserting the *trial court* erred. However, both the PCR Court and the Appellate Division found that the trial court's failure to define "attempt" for the jury was not plain error under New Jersey law in the course of their ineffective assistance of counsel analysis. Re 53 at 11; Re 49 at 9.

Rather than determine whether Petitioner has procedurally defaulted on this claim, especially since Respondent does not argue before this Court that Petitioner has procedurally defaulted, the Court will review and deny the claim on its merits. Due to the reframing of the argument from an ineffective assistance claim to a due process claim, it is not clear whether there was a true decision on the merits by the state courts. The Court will therefore give Petitioner the benefit of the more lenient de novo standard of review as his claim would fail under either a de novo or deferential standard. *See Lewis v. Horn*, 581

F.3d 92, 101 (3d Cir. 2009)("[W]e need not resolve whether the
Pennsylvania Supreme Court's decision on direct appeal is
entitled to AEDPA deference because we conclude that, even if we
exercise de novo review, [Petitioner's] claim fails for several
reasons.").

    *2. Merits Review*

    Petitioner argues "[b]ecause no property from the victim
was taken, the State's burden of proof was that Defendant
attempted a theft, however the trial court failed to define
attempt to the jury . . . ." Petition at 5 (emphasis in
original). Petitioner argued before the Appellate Division on
his PCR appeal that

> [o]ne is guilty of robbery if, in the course of
> committing a theft, he inflicts bodily injury upon or
> uses force upon another. An act is considered to be in
> the course of a theft if it consists of an attempt to
> commit theft. N.J. STAT. ANN. § 2C:15-1.
>
> The trial judge's instruction to the jury as to the
> elements of the crime of robbery included an instruction
> that the "State must prove beyond a reasonable doubt
> that the defendant was in the course of committing a
> theft. In this connection you are advised that an act is
> considered to be in the course of committing a theft if
> it occurs in an attempt to commit the theft, during the
> commission of the theft itself or in an immediate flight
> after the attempt or commission." However, the trial
> judge did not include in the instruction an explanation
> of what conduct is sufficient to constitute an attempt
> to commit theft.

Petitioner's PCR appellate brief, Re 50 at 18.

Federal "habeas precedent places an especially heavy burden on a defendant who . . . seeks to show constitutional error from a jury instruction that quotes a state statute." *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (internal citation and quotation marks omitted). To show that the jury instruction violated due process, Petitioner must show "both that the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Id.* at 190-91 (internal citation and quotation marks omitted). The instruction "must be considered in the context of the instructions as a whole and the trial record." *Id.* at 191 (internal citation and quotation marks omitted). Moreover, "it is not enough that there is some slight *possibility* that the jury misapplied the instruction, the pertinent question is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Ibid.* (internal citation and quotation marks omitted) (emphasis in original). "In other words, the inquiry requires careful consideration of each trial's unique facts, the narratives presented by the parties, the arguments counsel delivered to the jurors before they retired to deliberate, and the charge as a whole." *Williams v. Beard*, 637 F.3d 195, 223 (3d Cir. 2011) (citing *Waddington*). "[T]he fact

12

that the instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).

In the course of instructing the jury, the trial court read the robbery statute, N.J. STAT. ANN. 2C:15-1, and summarized the elements of the offense:

> [T]he statute upon which this indictment is based reads as follows: "A person is guilty of robbery if, in the course of committing a theft, he knowingly inflicts bodily injury or uses force upon another, or threatens another with or purposely puts him in fear of immediate bodily injury."
>
> In order for you to find the defendant guilty of robbery, the State is required to prove each of the following elements beyond a reasonable doubt.
>
> One: that the defendant was in the course of committing a theft.
>
> Two: that while in the course of committing a theft, the defendant knowingly inflicted bodily injury or used force upon another or threatened another with or purposely put another in fear of immediate bodily injury. "Another" is the victim.

Trial Transcript, Re 2 at 106:8-23. The trial court then informed the jurors that "[t]he State must prove beyond a reasonable doubt that the defendant was in the course of committing a theft[,]" which the court defined as "occur[ing] in an attempt to commit the theft, during the commission of the theft itself, or in an immediate flight after the attempt or commission." *Id.* at 106:22 to 107:6. "Theft" was defined as "the unlawful taking or exercise of unlawful control over

13

property of another with the purpose to deprive him thereof."

*Id.* at 107:7-9.

The trial court defined "with purpose" and "purposely" before moving onto the second element of robbery.

> In addition to proving beyond a reasonable doubt that the defendant was in the course of committing a theft, the State must prove beyond a reasonable doubt that while in the course of committing a theft, the defendant knowingly inflicted bodily injury or used force upon another.

*Id.* at 107:20-25. The court then defined "knowingly," "bodily injury," and "force" for the jury. *Id.* at 108:1-25. The trial court then repeated its instruction that it was the State's obligation to prove both elements:

> So, if you find the State has failed to prove these elements beyond a reasonable doubt, then you must find the defendant not guilty. If you find that the State has proven these elements beyond a reasonable doubt, then you must find the defendant guilty.
>
> So let me tell you about them again. In order for you to find the defendant guilty of the charge of robbery, the State is required to prove each of the following elements beyond a reasonable doubt.
>
> One: that the defendant was in the course of committing a theft.
>
> Two: that while in the course of committing a theft, the defendant knowingly inflicted bodily injury or used force upon another or threatened another with or purposely put another in fear of immediate bodily injury.
>
> If you find that the State has failed to prove any of those elements beyond a reasonable doubt, then you must find the defendant not guilty. If you find that the

14

> State has, did prove these elements beyond a reasonable
> doubt, then you must find the defendant guilty.

*Id.* at 109:1-23.

Having reviewed the record, the Court finds that
Petitioner's claim of error in failing to define attempted theft
to the jury does not fall within the narrow set of circumstances
that warrants habeas relief. As explained above, to show that
the jury instruction violated his due process rights, Petitioner
must demonstrate that the instruction was ambiguous and that the
State was absolved of its duty to prove each element of the
charged crime. *Waddington v. Sarausad*, 555 U.S. 179, 190-91
(2009). Here, the Court need not determine whether the
instruction was ambiguous as Petitioner has not established that
the absence of the attempt definition resulted in a reasonable
likelihood that the jury applied the instruction in a way that
relieved the State of its burden of proving every element of the
crime beyond a reasonable doubt. *See Henderson v. Kibbe*, 431
U.S. 145, 155 (1977) ("An omission, or an incomplete
instruction, is less likely to be prejudicial than a
misstatement of the law."); *Albrecht v. Horn*, 485 F.3d 103, 129
(3d Cir. 2007) (citing *Henderson*), *cert. denied sub nom Albrecht
v. Beard*, 552 U.S. 1108 (2008). In fact, Petitioner does not
argue the State was ever relieved of its burden.

15

Even if Petitioner had argued that the State was not required to prove each element of attempted robbery, the record would not support such an assertion. The trial court repeatedly instructed the jury that it was the State's responsibility to prove each and every element of the robbery charge beyond a reasonable doubt, and that if it did not meet its burden, the jury must find Petitioner not guilty. *See* Re 2 at 106:14-16, 109:1-10, 109:18-23. After giving this instruction once, the trial court again reviewed the elements of the robbery charge and charged the jury that "[i]f you find that the State has failed to prove any of those elements beyond a reasonable doubt, then you must find the defendant not guilty." *Id.* at 109:1-20. The jury was clearly and unambiguously instructed that it was the State's obligation to prove its case on each element, and there is no evidence suggesting the jury did not follow instructions.

Petitioner's defense at trial was that the victim instigated a fight by yelling racial slurs at him. Petitioner asserted that although he fought with the victim, he never tried to take anything from the victim. Re 2 at 82:1 to 83:16; Re 53 at 8. In affirming the PCR Court's denial of Petitioner's claims, the Appellate Division found that

> the only two witnesses to the incident that testified at trial, Pena and Calton, provided compelling evidence that defendant intended and nearly succeeded in robbing

16

Pena; nothing in their testimony provides a shred of support to defendant's claim that this was a simple assault.

[A] defendant can be convicted of robbery, even if the theft is unsuccessful, if he or she (1) purposely takes a substantial step (2) to exercise unlawful control over the property of another (3) while threatening another with, or purposely placing another in fear of, immediate bodily injury. Although defendant did not succeed in removing Pena's chain, his conduct went well beyond mere preparation and was unequivocally a substantial step in the commission of the robbery.

We are satisfied that the failure to instruct the jury as to attempt . . . was not error let alone plain error. The testimony of Pena and Calton coupled with the corroborating photographs of the injury to Pena's neck suffered while defendant was trying to snatch his chain established compelling evidence of defendant's guilt.

Re 53 at 11-12 (internal citations and quotation marks omitted). There is no clear and convincing evidence in the record that suffices to rebut the presumption that the appellate court's finding that Petitioner completed a substantial step towards a theft is correct; therefore, the Court must accept it as true. *Robinson v. Beard*, 762 F.3d 316, 324 (3d Cir. 2014), *cert. denied sub nom Robinson v. Wetzel*, 136 S. Ct. 53 (2015).

As there was sufficient evidence before the jury to meet the State's burden on each element of the robbery charge, and they were properly instructed as to the State's burden of proof, Petitioner has not shown that the instructions as given so tainted his trial that he was deprived of due process. *See Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) ("The burden of

17

demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal."). He is therefore not entitled to habeas relief on this claim.

## B. Ground Two

In Ground Two, Petitioner challenges the PCR Court's failure to grant his discovery motion for Ms. Calton's phone records and the State's use of her allegedly perjured testimony. Petition at 7. Petitioner is not entitled to relief on either of these bases.

Petitioner's claim that the PCR court "wrongfully denied" him access to Ms. Calton's phone records is not cognizable in federal habeas. Section 2254 limits the federal courts' ability to grant relief from a state court judgment "only on the ground that he is in *custody* in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added). "Thus, the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state . . . proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation." *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998), *cert. denied*, 526 U.S. 1065 (1999). In other words "alleged errors in

18

collateral proceedings . . . are not a proper basis for habeas relief from the original conviction. It is the original trial that is the 'main event' for habeas purposes." *Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004), *cert. denied*, 544 U.S. 1063 (2005); *see also Thomas v. Miner*, 317 F. App'x 113, 115 (3d Cir. 2008) (citing *Hassine*). Petitioner is not entitled to relief on this theory.

Petitioner's claim regarding the state's alleged knowing use of Ms. Calton's perjured testimony does relate to his trial proceeding and may be analyzed on federal habeas review. However, Petitioner failed to exhaust this claim before the state courts. Petitioner raised this claim in a pro se submission to the PCR court dated May 20, 2010. Re 30 at 7. On May 20, 2011, however, he wrote to the PCR court stating:

> with the exception of the legal arguments contained in Point III of his May 20, 2010 PCR Supplemental Brief [ineffective assistance of trial counsel], petitioner relin[q]uishes and deletes all remaining legal arguments contained in his previously filed submissions. . . . An objective review of those deleted arguments firmly shows that they are without substantive merit . . . . Indeed, it would be a waste of judicial resources to insist upon and proceed with the May 20, 2010 submission.

Re 38 at 2 (emphasis in original). Petitioner withdrew and abandoned this claim before the PCR court,[6] and cannot now seek

---

[6] Petitioner did argue to the PCR court that counsel was ineffective assistance for failing to investigate Ms. Calton.

federal habeas relief on this ground he has conceded has no
merit.

Even if this Court were to consider this argument under the
more lenient de novo standard of review, Petitioner would not be
entitled to relief. The PCR Court found[7] trial counsel was not
ineffective for failing to investigate the alleged perjury as
there was no evidence Ms. Calton had in fact perjured herself at
trial:[8]

> No certifications or affidavits have been submitted
> which suggest Calton had any reason to lie with regard
> to what she saw that night, or that she now wishes to
> recant her testimony. The allegation further assumes
> prosecutorial and police misconduct which is also not
> supported by the record. [Petitioner] claims that a
> police report related to Calton's statement was back-
> dated to the date of the incident. However, at trial,
> counsel elicited testimony that Calton's statement of
> her eyewitness account was taken on January 27, 2007,
> more than a year after the incident on January 1, 2006.
> The jury, therefore, heard about and considered the
> length of time between the incident and the statement.

---

[7] The Appellate Division determined Petitioner's ineffective
assistance of counsel claim based on the failure to investigate
the alleged perjury lacked sufficient merit to warrant
discussion, Re 53 at 12, therefore this Court must rely on the
factual findings of the PCR Court. *Simmons v. Beard*, 590 F.3d
223, 231-32 (3d Cir. 2009).

[8] In order to in order to demonstrate a violation of the
Fourteenth Amendment's prohibition on the knowing use of
perjured testimony, "[Petitioner] must show that (1) [Ms.
Calton] committed perjury; (2) the government knew or should
have known of [her] perjury; (3) the testimony went uncorrected;
and (4) there is any reasonable likelihood that the false
testimony could have affected the verdict." *Lambert v.
Blackwell*, 387 F.3d 210, 242-23 (3d Cir 2004).

Re 49 at 15. The court also noted that trial counsel "pursued
inconsistencies in her statement to police and her testimony at
trial, including the number of people who were present and
helped subdue petitioner. Counsel also questioned her regarding
her reasons for waiting almost a year to give a statement to
police." *Id.* at 14-15. Furthermore, the inconsistences in her
statements as to whether she only heard or actually witnessed
the altercation were explored at trial during cross-examination,
Re 2 at 65:8 to 70:10, and Ms. Calton admitted she had not told
the 911 operator or responding police officers that she
witnessed the incident, *id.* at 69:9-25. "Discrepancy [in a
witness's testimony] is not enough to prove perjury." *Lambert v.
Blackwell*, 387 F.3d 210, 249 (3d Cir. 2004). Petitioner has not
established Ms. Calton actually perjured herself at trial;
therefore, he is not entitled to habeas relief on that ground.

## C. Ground Three

Ground Three asserts Petitioner's attorney on his direct
appeal was ineffective for failing to raise the issue of the
omitted jury instruction defining attempt. This claim was
decided on its merits by the Appellate Division, therefore this
Court may not grant relief unless the decision was contrary to,
or involved an unreasonable application of, clearly established
Supreme Court precedent. 28 U.S.C. § 2254(d)(1).

"Due process entitles a criminal defendant to the effective assistance of counsel on his first appeal as of right." *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002) (citing *Evitts v. Lucey*, 469 U.S. 387, 396 (1985)). In determining whether appellate counsel was ineffective, the Court applies the standard set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *Smith v. Murray,* 477 U.S. 527, 535-536 (1986). Petitioner must first "show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. He must then show "that there is a 'reasonable probability' — 'a probability sufficient to undermine confidence in the outcome,' but less than a preponderance of the evidence — that his appeal would have prevailed had counsel's performance satisfied constitutional requirements." *Cross*, 308 F.3d at 315 (quoting *Strickland*, 466 U.S. at 694-95).

The Court need not address whether appellate counsel's performance was deficient as Petitioner has not shown he was prejudiced by the failure to raise the jury instruction argument on direct appeal. *Ibid.* (noting courts may begin with the prejudice prong "[b]ecause failure to satisfy either prong defeats an ineffective assistance claim"). The Appellate Division correctly identified *Strickland* as the governing standard, Re 53 at 11, and found that there was "ample evidence

22

in the record to support each element of the robbery charge." The court cited the PCR court's decision on the attempted theft instruction:

> The testimony and evidence demonstrated that defendant started a physical altercation with the victim for the purpose of taking his gold chain and money. While grabbing for the chain, defendant verbally demanded the victim's money. The only reason defendant was unsuccessful was because the victim was able to fight off the defendant and subdue him.

*Id.* at 8. After distinguishing Petitioner's case from its precedent in *State v. Gonzalez*, 723 A.2d 1278 (N.J. Sup. Ct. App. Div.), *certif. denied*, 753 A.2d 573 (N.J. 1999), the Appellate Division ultimately concluded that "the failure to instruct the jury as to attempt . . . was not error let alone plain error." *Id.* at 11. The Court is bound by the New Jersey court's interpretation and application of New Jersey state law and, therefore, accepts the Appellate Division's conclusion that the trial court was not required to define "attempt" for the jury. This indicates that had appellate counsel argued on appeal that the trial court should have given the attempt instruction, the result would have been the same.

Giving deference to that finding, and this Court having previously found that Petitioner's due process rights were not violated by the omission of this instruction, Petitioner has not established he was prejudiced by appellate counsel's failure to raise this argument on direct appeal. Because "counsel cannot be

23

deemed ineffective for failing to raise a meritless claim," the New Jersey court was not unreasonable in its application of *Strickland* when it concluded that appellate counsel was not deficient in failing to challenge the omission of the attempt definition. *Ross v. Dist. Attorney of the Cnty. of Allegheny*, 672 F.3d 198, 211 n.9 (3d Cir. 2012) (quoting *Werts v. Vaughn*, 228 F.3d 178, 202 (3d Cir. 2000)). It is not at all likely that the outcome of the appeal would have changed absent appellate counsel's alleged error, therefore Petitioner has not established that the Appellate Division unreasonably applied *Strickland*.

## D. Ground Four

Petitioner's final basis for habeas relief rests on a claim of error by the PCR court. Petitioner alleges the PCR court improperly relied on a brief submitted by his first PCR attorney that was withdrawn after that attorney ceased representing Petitioner. As previously noted, claims of error by the PCR court are not proper bases for habeas relief. *Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004), *cert. denied*, 544 U.S. 1063 (2005); *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998), *cert. denied*, 526 U.S. 1065 (1999). Petitioner's challenge to the PCR court's consideration of a brief submitted by an attorney who subsequently withdrew from representation is "inappropriately advanced as a substantive claim in a habeas

24

petition." *Thomas v. Miner*, 317 F. App'x 113, 115 (3d Cir. 2008). Habeas relief is denied.

## E. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons expressed above, Petitioner has failed to make a substantial showing that he was denied a constitutional right. As jurists of reason could not disagree with this Court's resolution of his claims, the Court shall deny Petitioner a certificate of appealability.

## V. CONCLUSION

For the reasons stated above, the habeas petition is denied. A certificate of appealability shall not issue. An accompanying Order will be entered.

*April 11, 2016*
Date

*Anne E. Thompson*
ANNE E. THOMPSON
U.S. District Judge

25